# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | |
|---|---|
| **MATTHEW RAGONA** | **CIVIL ACTION NO. 1:19-CV-00960** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **LOUISIANA WORKFORCE COMMISSION** | **MAGISTRATE JUDGE JOSEPH H. L. PEREZ-MONTES** |

## MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT ("the Motion") [Doc. 23] filed by Defendant, Louisiana Workforce Commission. For the following reasons, the Defendant's Motion is GRANTED.

### PROCEDURAL HISTORY

On July 24, 2019, Matthew Ragona, ("Ragona" or "Plaintiff"), filed suit against his former employer, the Louisiana Workforce Commission, ("LWC" or "Defendant"), asserting employment discrimination claims pursuant to Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA"). [Doc. 1 ¶ 2]. Plaintiff's claims stem from his allegations that the LWC wrongfully terminated his employment when it failed to properly investigate a sexual harassment allegation lodged against Plaintiff by another employee, and, further, that the facts underlying the sexual harassment complaint were precipitated, at least in part, by his disability. [Docs. 1 p. 1,3].

On September 15, 2020, Defendant filed this Motion for Summary Judgment (the "Motion") [Doc. 23]. Plaintiff then filed three motions for extension of time to file a memorandum opposing summary judgment. [Docs. 25, 29, 36]. The Court granted

1

each of these requests, and Plaintiff ultimately filed his opposition to the Motion nearly a year later, on August 30, 2021. [Doc. 39]. Both Defendant and Plaintiff subsequently filed supplemental memorandums relating to the Motion with leave of the Court. [Docs. 49, 52]. The Defendant's Motion is now ripe for ruling.

## BACKGROUND

Plaintiff, a male with a physical disability, cerebral palsy, began working for the Louisiana Workforce Commission as a "Workforce Development Specialist 2" on December 8, 2014. [Doc. 1 p. 2]. On May 14, 2018, Plaintiff's co-worker, Heather Daigrepont ("Daigrepont"), told a co-worker, Tony Vets ("Vets"), that certain interactions she had with Plaintiff were causing her concern. [Doc. 43 p. 34]. Vets advised Daigrepont to write down a summary of the incidents. [Doc. 45 p. 29]. Daigrepont took this advice and sent a copy of her written statement to Vets. [Doc. 43 p. 32]. Upon reading Daigrepont's statement (the "Daigrepont Statement"), Vets believed that the allegations constituted a formal complaint of sexual harassment and forwarded it to his immediate supervisor, Barbara Leach. [Doc. 45 p. 31]. Leach then forwarded the statement to her supervisor, who then sent the statement to LWC's Human Resources Department. [Doc. 47 p. 22].

In the statement, Daigrepont recounted events between her and the Plaintiff that she described as a "cause for concern." [Doc. 39-7 p. 21]. Particularly, Daigrepont claims that Plaintiff "whistled" at her as she was leaving work one day. [Doc. 39-7 p. 21]. Daigrepont also described an incident wherein Plaintiff gave her a gift in the parking lot after work. [Doc. 39-7 p. 21]. Daigrepont then "thanked" Plaintiff for the

gift by giving him a "proper side hug, facing away from him," at which point Plaintiff allegedly pulled her closer and kissed her on the neck causing her to feel "immediate violation." [Doc. 39-7 p. 21]. On May 31, 2018, shortly after the Daigrepont Statement was provided to LWC's Human Resources Department, LWC terminated Plaintiff's employment. [Doc. 39-7 p. 26].

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Louisiana Commission on Human Rights alleging discrimination based on sex and disability. [Doc. 42-1 p. 9]. Plaintiff received a right to sue letter from the EEOC dated April 25, 2019, and timely filed suit in this Court. [Doc. 1 p. 4].

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor,

including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and thus a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party...." *Id.*

## DISCUSSION

The Motion seeks summary judgment on each of Plaintiff's claims of gender and disability discrimination. The Court addresses each claim in turn.

### A. Gender Discrimination Claim

#### i. Arguments Before the Court

Plaintiff's allegations in the Complaint center around his contention that LWC disregarded its own sexual harassment policy when it failed to conduct a proper investigation into the Daigrepont Statement. [Doc. 1 p. 3]. Plaintiff further claims that if an investigation had been conducted it would have revealed that inappropriate behavior and jokes by his co-workers, specifically female co-workers, were an "accepted practice at LWC." [Doc. 1 p. 3].

In the Motion, Defendant seeks summary judgment based on its argument that Plaintiff's allegations and the underlying facts do not establish a *prima facie* case of gender discrimination. [Doc. 23-1 p. 6]. Defendant also maintains that Plaintiff cannot show that he was treated less favorably than other similarly situated female employees or that his termination was a pretext for discriminatory animus. [Doc. 23-1 p. 6-7].

In response, Plaintiff claims that his termination resulted from "purposeful discrimination and harassment" and that there are, at a minimum, genuine issues of fact as to whether similarly situated employees were retained by LWC despite similar conduct. [Doc. 39-2 p. 15]. In support, Plaintiff maintains that he had "an impeccable employment history" and claims that similarly situated female co-workers engaged in more egregious behavior than Plaintiff's alleged conduct. [Doc. 39-2 p. 15]. Plaintiff maintains that he was treated differently than these similarly situated female co-employees because he was not notified of the sexual harassment complaint and was not provided certain due process protections articulated in LWC's Sexual Harassment Policy. [Doc. 39-2 p. 15].

Additionally, Plaintiff claims that the reasons Defendant provided for his termination were pretextual. [Doc. 39-2 p. 18-19]. In support, Plaintiff maintains that the first reason provided for his termination, *i.e.,* that it was a "layoff," is pretextual because his department was, in fact, "shorthanded" during the relevant period. [Doc. 39-2 p. 18]. Plaintiff claims that the other reason given for his termination, *i.e.,* the sexual harassment complaint, was pretextual because "even a

5

cursory review of the facts" would lead to the conclusion that none of Plaintiff's conduct "was even arguably unwelcomed." [Doc. 39-2 p. 19].

### ii. *Prima Facie* Case

A claim of discrimination can be shown either through direct or circumstantial evidence. *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012), as revised (June 22, 2012) (citing *Russel v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). In the absence of any direct evidence,[1] the plaintiff must use circumstantial evidence to establish a *prima facie* case of discrimination under the *McDonnell Douglass* framework. *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973); *see also*, *Turner*, 675 F.3d at 892. To defeat summary judgment, the *McDonnell Douglas* standard requires a plaintiff to show that he: (i) belongs to a protected class; (ii) was qualified for the position; (iii) was subject to an adverse employment action; and (iv) was replaced by someone outside the protected class or was treated less favorably than other similarly situated employees that are outside the protected class. *Wright v. United Parcel Serv., Inc. (Ohio)*, 842 F. App'x 869, 872 (5th Cir. 2021).

Here, it is undisputed that Plaintiff is a male, that he was qualified for his position as a "Workforce Development Specialist 2," and that he was subject to an adverse employment action when he was terminated. The focus of the Court's inquiry, then, is on the fourth element, *i.e.,* whether Plaintiff can demonstrate that

---

[1] Plaintiff has neither alleged nor submitted to the Court any direct evidence of gender discrimination in response to the Defendant's Motion for Summary Judgment.

6

there is a genuine issue of material fact as to whether he was treated less favorably than similarly situated female employees.[2]

Employees are considered similarly situated when they have "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Garcia v. Pro. Contract Services, Inc.*, 938 F.3d 236, 244 (5th Cir. 2019) (quoting *Lee v. Ks. City Rwy. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009)). Once similarly situated employees are identified, the Plaintiff must also show that the alleged conduct leading to his adverse-employment decision is "nearly identical" to the comparable history of similarly situated employees who did not receive the same treatment. *Id*.

Plaintiff claims that he and his female co-employees have comparable violation histories because, "similarly situated female employees at LWC participated in inappropriate conversations and conduct, but only Plaintiff, who did not participate in this behavior, and who strived to be friends with everyone, was singled out." [Doc. 1 p. 3]. However, the only evidence supporting this claim is Plaintiff's own testimony, which is not substantiated by any documentary evidence nor by the testimony of any of his co-workers.[3] [Doc. 42 p. 200] [Doc. 44 p. 36-37]. Further, there is no evidence

---

[2]  Plaintiff has neither alleged nor submitted to the Court any evidence that he, "was replaced by someone outside the protected class," the first part of the *McDonnell Douglas* framework's fourth requirement.

[3]  In his deposition, Plaintiff testified that "…many of the women there, because they were trying to be nice to me, would often say risqué or ribald things that I thought went beyond what you should say at work." [Doc. 42 p. 200]. In contrast, one of Plaintiff's co-workers answered "no" when he was asked if it was common for "jokes with sexual overtones to be made in the office," or if those types of jokes were tolerated in the office. [Doc. 44 p. 36-37].

7

in the record that the LWC's Human Resources Department received complaints of sexual harassment pertaining to any similarly situated female employees.[4] [Doc. 46 p. 67] [Doc. 47 p. 32]. Because: (i) LWC received a formal sexual harassment complaint against Plaintiff, but not against any of his similarly situated female co-workers and, (ii) there is no other evidence supporting Plaintiff's claim that other employees engaged in similar conduct, Plaintiff is unable to demonstrate that he was treated less favorably than similarly situated employees of a different gender.[5] Accordingly, Plaintiff fails to make a *prima facie* case of gender discrimination.

### iii. Employer's Legitimate Non-Discriminatory Reason

Assuming *arguendo* that Plaintiff can establish a *prima facie* case of gender discrimination under these facts, summary judgment is nonetheless appropriate because Plaintiff fails to carry his burden of showing a pretextual reason for his termination.

It is well established that once a plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the defendant to demonstrate that there

---

[4] One of Plaintiff's supervisors testified in his deposition that the sexual harassment complaint against Ragona was the first he had received. [Doc. 46 p. 67]. Plaintiff's direct supervisor also testified that she had never received any other complaints of sexual harassment. [Doc. 47 p. 32].

[5] Plaintiff also alleges that the failure of Defendant to follow its internal Sexual Harassment Policy when the complaint against him was received is "indicative of discriminatory motive." [Doc. 52 p. 11]. To support this claim Plaintiff asserts only that, "[o]ne has a hard time believing that if Ragona was female, he would not have been provided all of these protections," and that "Ragona was male and Daigrepont was female – clearly gender motivated the Defendant's actions." [Doc. 39-2 p. 15]. Unsubstantiated assertions, conclusory allegations, and speculation are insufficient to satisfy the plaintiff's burden. *Grimes v. Texas Dept. Of Mental Health and Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996.

was a legitimate business reason for the adverse employment action. *Wright v. United Parcel Serv., Inc. (Ohio)*, 842 F. App'x 869, 872 (5th Cir. 2021) (citing *McDonnell Douglas*, 411 U.S. at 802). "The burden on the employer at this stage 'is one of production, not persuasion; it can involve no credibility assessment.'" *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000)).[6] If the employer can show there was a legitimate, non-discriminatory, reason for the adverse-employment action, the burden then shifts back to the plaintiff who is required to establish that this provided reason was a pretext for discriminatory motives. *Myles v. TPUSA-FHCS*, Inc., 2020 WL 6276957 at *3 (W.D. La. 2020). A Plaintiff may demonstrate pretext by showing that a discriminatory motive more likely motivated the employer's decision, such as through evidence of disparate treatment, or by establishing that the employer's propounded legitimate business reason is unworthy of credence.[7] *Id.* To survive a motion for summary judgment, a plaintiff must produce substantial evidence of pretext. *Auguster v. Vermilion Parish School Board*, 249 F.3d 400, 402–403 (5th Cir. 2001). "Conclusory statements" or a "subjective belief of discrimination" are not considered sufficient evidence that could show pretext of discrimination. *Id.* S*ee also*,

---

[6]  "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

[7]  The employer's legitimate business reason can be considered "unworthy of credence" if "it is not the real reason for the adverse employment action." *Stump v. City of Shreveport,* 2015 WL 5794474 at *10 (La. W.D. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir)).

9

*Myles*, 2020 WL 6276957 at *5 (quoting *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999)).

Here, LWC provides two reasons for Plaintiff's termination – that he was "laid off" and that his employment was terminated because of the sexual harassment complaint. [Doc. 39-2 p. 17]. Accordingly, the burden shifts back to Plaintiff to show that these proffered reasons were only a pretext for terminating him based on his gender. In doing so, Plaintiff must present evidence to rebut <u>each nondiscriminatory reason</u> produced by the employer. *Haire v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013) (emphasis added).

Here, Plaintiff fails to provide any evidence that would show Defendant's termination of his employment was more likely related to his gender than the sexual harassment complaint. In this regard, Plaintiff does not present any summary judgment evidence of disparate treatment related to his gender or that LWC's proffered reason for his termination is unworthy of credence. Instead, Plaintiff merely argues that the Daigrepont Statement could not be considered a complaint of sexual harassment because "even a cursory review of the facts would show that there was no intent to harass by Ragona," and that there was no conduct that was even arguably "unwelcomed." [Doc. 39-2 p. 19].

It is important to note here that the ultimate facts behind the allegations made in the Daigrepont Statement are largely immaterial to this Court's evaluation of the legitimacy of the business reasons proffered by the LWC for Ragona's termination. It is undisputed that the Daigrepont Statement was sent by Plaintiff's supervisors to

Human Resources. Defendant then considered this a complaint of sexual harassment and sufficient grounds for Plaintiff's termination. Though an employer's decision may be based on incomplete information or seem unfair in retrospect, that does not make the decision discriminatory. *See Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) ("Title VII does not protect an employee against unfair employment decisions; instead, it protects against employment decisions based upon discriminatory animus."). Instead, the Court must evaluate LWC's decision at the time the employment decision was made, without the advantage of hindsight. *See Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 372 (5th Cir. 1997) ("[W]e do not view the discrimination laws as vehicles for judicial second-guessing of business decisions."). Although seemingly raising a legitimate dispute regarding the fairness of the process LWC used in making its decision to terminate him, Plaintiff has not shown that this decision was motivated by a discriminatory purpose. Because Plaintiff fails to show that the second reason for his termination provided by Defendant, the sexual harassment complaint, was either more likely motivated by discriminatory intent or unworthy of credence, the Court need not evaluate whether LWC's claim to have "laid off" the Plaintiff was pretextual.

Accordingly, the Court grants summary judgment in Defendant's favor as to Plaintiff's Title VII gender discrimination claim.

B. **Disability Discrimination Claim**

### i. Arguments Before the Court

Plaintiff suffers from cerebral palsy, which the parties agree qualifies as a disability under the ADA. Because of his medical condition, Plaintiff alleges that he has had a dearth of close relationships and may have misperceived Daigrepont's actions towards him, resulting in his apparently mistaken belief that his "continued friendliness [towards Daigrepont] was welcomed." [Doc. 1 p 2]. Additionally, Plaintiff alleges that his disability hampered his ability to perceive Daigrepont's apparent discomfort with his actions.

Defendant seeks summary judgment on these claims based on its contention that Plaintiff can neither provide direct evidence of discrimination based on disability nor produce evidence that supports the claim of a causal connection between his disability and his termination from employment. [Doc. 23-1 p. 4]. Further, Defendant argues that even if Plaintiff can establish a *prima facie* case of discrimination, he is unable to show that LWC's reason for terminating his employment was pretextual. [Doc. 23-1 p. 4].

In response, Plaintiff claims that he can meet his burden of establishing a *prima facie* case of disability discrimination under the ADA. [Doc. 39-2 p. 16]. Plaintiff asserts that he can at least create a genuine issue of fact as to a connection between his termination and his disability. [Doc. 39-2 p. 16]. Plaintiff suggests that the reasons provided by Defendant for his termination are a pretext for discrimination. [Doc. 39-2 p. 18-19]. Specifically, Plaintiff claims that the reasons

given for his termination, *i.e.,* "layoff" and a complaint of sexual harassment are both not credible. [Doc. 39-2 p. 18-19].

### ii. *Prima Facie* Case

Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). If a plaintiff claims discrimination under ADA but cannot put forth any direct evidence[8] of discrimination, he must use the *McDonnell Douglass* framework to establish a *prima facie* case of discrimination. *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017) (citing *McDonnell Douglas Corp* at 802); see also *Kittling v. Boise Cascade, LLC*, 2020 WL 1979894 at *3 (W.D. La. 2020). The *McDonnell Douglass* framework requires the plaintiff to establish that he: (i) had a disability or was regarded as disabled; (ii) was qualified for the job; and (iii) was subject to an adverse employment decision because of his disability. *Id*.

Here, it is undisputed that Plaintiff has the disability of cerebral palsy and that he was qualified for his position as a "Workforce Development Specialist 2." Plaintiff, therefore, need only prove the third requirement under the *McDonnell Douglas* framework and show that he was subject to an adverse employment action because of his disability.

In support of a causal connection between his termination and disability, Plaintiff states that his disability causes "awkwardness in social interactions." [Doc.

---

[8] Plaintiff has neither alleged nor submitted to the Court any direct evidence of disability discrimination in response to the Defendant's Motion for Summary Judgment.

39-2 p. 16]. Plaintiff further claims that due to his disability he "has not had many relationships in the past," which caused him to misperceive Daigrepont's actions, ultimately leading to her written statement. [Doc. 1 p. 2]. Further, Plaintiff claims that "it was never made clear to him if his actions or his disability led to the Daigrepont Statement." [Doc. 39-2 p. 11]. Additionally, Plaintiff asserts that he was the only disabled employee of Defendant. [Doc. 39-2 p. 16].

Each of these contentions fail for lack of evidence. Apart from his subjective belief, Plaintiff has failed to make any showing that his disability motivated the Daigrepont Statement. Daigrepont's written statement does not mention Plaintiff's disability nor is there any evidence in the record that Plaintiff's disability impacted Daigrepont's decision to write the statement. Further, Plaintiff provides no evidence that the LWC was motivated by Plaintiff's disability when it terminated Plaintiff's employment. Accordingly, Plaintiff's claim that he was terminated because of his disability is only supported by the conclusory and unsupported allegation that his disability had a causal connection to the sexual harassment complaint.[9] *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment.") (citing

---

[9] In his deposition, Plaintiff testified that he believed Daigrepont "targeted" him because he had a disability and that in terminating him, Defendant "felt that [he] would be an easy target…because [he is] physically disabled." [Doc. 42 p. 1117 and 193]. Besides this speculative statement, Plaintiff provides no evidence demonstrating that his disability had a role in Defendant's decision to terminate him.

14

*Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *United States v. An Article of Drug*, 725 F.2d 976, 984–85 (5th Cir. 1984)).

Because Plaintiff provides no evidence that his disability had any causal connection to his termination, he has failed to meet his burden of establishing a *prima facie* case of discrimination. Accordingly, the Court grants summary judgment in Defendant's favor as to Plaintiff's claims under the Americans with Disabilities Act.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [Doc. 23] is GRANTED.

IT IS FURTHER ORDERED that all claims asserted by Plaintiff against LWC are DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 27th day of September 2021.

*[Signature: David C. Joseph]*
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE